**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-01301-001-TUC-JAS (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Iris Rodriguez, | |
| Defendant. | |

Pending before the Court is a Report and Recommendation ("R & R") (Doc. 47) issued by United States Magistrate Judge Macdonald that recommends denying Defendant Iris Rodriguez's Motion to Suppress Evidence (Doc. 29). Ms. Rodriguez filed an Objection to the R & R (Doc. 48) urging the Court to reject the R & R. The Government filed a response to Ms. Rodriguez's objection (Doc. 49). For the reasons stated below, the R & R is rejected, in part, and adopted in part.[1]

**BACKGROUND**[2]

On July 28, 2017, at approximately 5:25 p.m., a Sonoran shuttle drove into the

---

[1] The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim R. 59(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998). Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting and citing cases throughout this Order.

[2] The facts in this section have been taken from the R & R. The Court may not reject the Magistrate Judge's finding of fact and credibility determinations without holding a *de novo* evidentiary hearing. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002). The Court does not believe that an evidentiary hearing is required in this case and therefore adopts the Magistrate Judge's finding of facts and credibility determinations.

I-19 Border Patrol Checkpoint in Southern Arizona. Ms. Rodriguez was a passenger in the shuttle. Per the standard practice at the checkpoint, the shuttle was directed to the secondary inspection area. Agent Salcedo was stationed in the secondary inspection area of the I-19 checkpoint.

Agent Salcedo observed the passengers exit the shuttle. Ms. Rodriguez caught Agent Salcedo's attention because she made eye contact and moved away from Agent Salcedo. Agent Salcedo questioned Ms. Rodriguez regarding her citizenship. Ms. Rodriguez provided her Arizona driver's license. Agent Salcedo asked for additional identification as she did not believe the picture on the driver's license matched the person standing in front of her. Ms. Rodriguez provided a United States passport card. Again Agent Salcedo did not believe the picture on the identification matched the person standing in front of her; additionally, Agent Salcedo did not believe that the pictures on the separate identifications matched one another. Agent Salcedo ran a records check to further investigate Ms. Rodriguez's immigration status.

While Agent Salcedo awaited the results from the record check, she questioned Ms. Rodriguez on where she was from and where she was coming from. At some point during the conversation Ms. Rodriguez moved away from Agent Salcedo and sat on a bench within the secondary inspection area. Agent Salcedo again approached Ms. Rodriguez.[3] Agent Salcedo asked Ms. Rodriguez if she would consent to a search. Ms. Rodriguez consented to be searched and Agent Salcedo escorted her to a white shed for privacy. Agent Salcedo was armed during the interaction, but she did not motion toward her holstered weapon or place Ms. Rodriguez under arrest. During the pat-down Agent Salcedo felt a hard, abnormal bulge under Ms. Rodriguez's left breast. This object felt similar to objects on other body carriers. Agent Salcedo requested that Ms. Rodriguez remove the object several times. Ms. Rodriguez became "hysterical." Agent Mead, who had been standing outside the shed, entered the shed, and instructed Ms. Rodriguez to

---

[3] Agent Salcedo states that from the initiation of contact with Ms. Rodriguez and obtaining consent to search Ms. Rodriguez was approximately forty-five (45) seconds. Therefore, she must have immediately followed Ms. Rodriguez, when Ms. Rodriguez walked away.

- 2 -

1 comply with Agent Salcedo's instructions or he would deploy his taser. The object was recovered and tested positive for characteristics of methamphetamine.

**DISCUSSION**

First, the Court finds the R & R appropriately resolved the issue regarding an Immigration Checkpoint. The Court agrees with the R & R that the checkpoint in this matter is constitutional. The only remaining issue is the search of the Defendant.

"[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "It is the government's burden to prove that the consent was freely and voluntarily given." *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004). Whether the consent is valid is determined from the "totality of all the circumstances." *Id*.

Previous cases from the Ninth Circuit Court of Appeals have identified five non-exhaustive factors to consider when determining voluntariness of consent. *Id*. at 502. The five factors are: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *Id*. It is important to note that "[n]o one factor is determinative in the equation." *Id*. The Ninth Circuit has examined cases similar to the matter at hand. *See United States v. Ortiz-Flores*, 462 F. App'x 759 (9th Cir. 2011) (mem.); *United States v. Preciado-Robles*, 964 F.2d 882 (9th Cir. 1992). In such a close call, those cases are instructive.

In *Preciado-Robles*, the defendant was sent to secondary at a permanent checkpoint. 964 F.2d at 884. At secondary an agent questioned the defendant and asked if he could search the defendant's car. *Id*. The agent searched the car compartments, asking for and receiving consent prior to searching each container. *Id*. The agent found "a brick-like bundle," which was later determined to be cocaine. *Id*. The defendant moved to suppress the search, which the district court denied. *Id*. The Ninth Circuit looked at the five factors and determined that the consent was voluntary. *Id*. at 885.

In *Ortiz-Flores*, the defendant entered a permanent checkpoint in a shuttle van.[4] Defendant-Appellant's Opening Brief, at 6, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 2452512, at *6; Brief for Appellee United States, at 3, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 3019781, at *3. The van was inspected at the bus lane. Defendant-Appellant's Opening Brief, at 6, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 2452512, at *6; Brief for Appellee United States, at 3, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 3019781, at *3. The agent spoke with the passengers. Defendant-Appellant's Opening Brief, at 8, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 2452512, at *8; Brief for Appellee United States, at 5, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 3019781, at *5. After the agent began to suspect that the defendant was engaged in illegal activity, the agent asked the defendant to exit the van. Defendant-Appellant's Opening Brief, at 8, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 2452512, at *8; Brief for Appellee United States, at 5, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 3019781, at *5. The agent asked to search the defendant's backpack and the defendant consented. Defendant-Appellant's Opening Brief, at 9, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 2452512, at *9; Brief for Appellee United States, at 6, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 3019781, at *6. The agent never gave *Miranda* warnings or told the defendant that he could refuse the search. Defendant-Appellant's Opening Brief, at 11, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 2452512, at *11; Brief for Appellee United States, at 6, *Ortiz-Flores*, 462 F. App'x 759 (No. 11-50095), 2011 WL 3019781, at *6. When the Ninth Circuit applied the five factors, they stated "Here, three factors indicate that the consent was involuntary: (1) Ortiz–Flores was seized at the time he gave putative consent, *see Preciado-Robles*, 964 F.2d at 884 ("A stop at a permanent immigration checkpoint constitutes a 'seizure' within the meaning of the Fourth Amendment." (*citing United States v. Martinez-Fuerte*, 428

---

[4] Because the facts were known to the parties, the Ninth Circuit did not recite them in the opinion. *Ortiz-Flores*, 462 F. App'x at *1. The facts were therefore obtained through the parties' briefing.

U.S. 543, 556 (1976))); (2) the agent did not give Ortiz–Flores Miranda warnings; and (3) the agent did not tell Ortiz–Flores he could refuse consent. Two factors weigh in favor of voluntariness: (1) guns were not drawn; and (2) the agent did not tell Ortiz–Flores that he could obtain a search warrant. Considering these facts in light of the totality of the circumstances and the context in which the searches took place, we find that Ortiz–Flores did not voluntarily consent to the backpack search or the pat-down search." *Ortiz-Flores*, 462 F. App'x at *1.

Based on the above precedent, the Court believes that this is a close question with guidance from the Ninth Circuit that points in multiple directions. Because *Ortiz-Flores* is more recent and closer to the facts presented in this case, the Court finds that in light of the totality of the circumstances the consent in this matter was not voluntary. It is clear that Ms. Rodriquez was seized at the checkpoint. She could not leave secondary at the checkpoint and when she did attempt to avoid the agent, the agent followed her. There were no *Miranda* warnings or acknowledgement that Ms. Rodriguez could withhold consent. While there were many guns present, none of these seems to have been used or referenced prior to obtaining consent from Ms. Rodriguez. Ms. Rodriguez was never told that a search warrant could be obtained. Additionally, unlike the agent in *Preciado-Robles*, Agent Salcido did not ask for consent multiple times as she proceeded.[5] *See* 964 F.2d at 884. To the contrary, when Ms. Rodriguez hesitated or became non-compliant, Agent Salcido proceeded and Ms. Rodriguez was threatened with use of a taser.

//
//
//
//
//

---

[5] During direct examination of Agent Salcedo it is mentioned that Agent Salcedo explained to Ms. Rodriguez the procedure of the pat-down, to which Ms. Rodriguez responded "Yes, okay." Doc. 42 at 30:22–31:1. This is characterized as a second consent by Agent Salcedo and the Government. *Id*. at 31:2–3. This seems to be a strained reading of the interaction and will not be characterized as unequivocal consent.

**CONCLUSION**

In light of the foregoing discussion, IT IS HEREBY ORDERED as follows:

(1) The R & R (Doc. 47) is adopted, in part, and rejected, in part.

(2) Defendant's Motion to Suppress (Doc. 29) is granted.

(3) This case is referred back to Magistrate Judge Macdonald for pertinent pretrial proceedings.

Dated this 10th day of September, 2018.

Honorable James A. Soto
United States District Judge